UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM OAKLEY,

        Plaintiff,

   v.                                              Case No. 10-C-880

TERRY J. VOGEL, individually,
and in his official capacity as
Sheriff of Door County, Wisconsin,

        Defendant.

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

     On October 6, 2010, Plaintiff William Oakley, the Democratic nominee for sheriff of Door County, Wisconsin, commenced this action for a temporary restraining order and preliminary and permanent injunctive relief against Defendant Terry J. Vogel, the incumbent sheriff and the Republican nominee. Oakley, who has himself been a deputy sheriff in Door County since approximately 1993, alleges that Sheriff Vogel has used his authority to hinder Oakley's campaign efforts and to retaliate against him for seeking Sheriff Vogel's office. More specifically, Deputy Oakley alleges that the Sheriff required that he attend a Basic Recruit Academy in Appleton, Wisconsin, a substantial distance from Door County, as a condition for receiving a transfer to the Patrol Division of the Department that Oakley requested in June. The Academy is a series of courses mandated by the State of Wisconsin for law enforcement officers which is offered by various technical colleges and lasts approximately thirteen weeks. Deputy Oakley was enrolled in the Academy beginning September 9, 2010, in Appleton, Wisconsin, about an hour-and-a-half from

Door County. Deputy Oakley claims that the course requires that he remain outside Door County residing at a hotel during the work week for almost two months leading up to the November 2, 2010 General Election. He asks the Court to enjoin his "compelled attendance at a 'Basic Recruit Academy' at Fox Valley Technical College in Appleton." (Doc. 5.)

According to the Complaint, the academy is designed to provide non-law enforcement personnel and those new to law enforcement with basic entry-level skills. Deputy Oakley has almost twenty years of experience, has already attended the academy, and has been certified by the Wisconsin Law Enforcement Bureau since the early 1990's. He alleges that the requirement that he attend the academy at a location a substantial distance from Door County has profoundly impeded, deterred and unduly burdened his campaign activities. He further alleges that his attendance at the academy serves no legitimate purpose and is motivated by, and has the effect of, suppressing and punishing his electoral efforts. Following an evidentiary hearing on the motion, it is now ripe for decision. For the reasons that follow, the motion will be denied.

**ANALYSIS**

In order to obtain preliminary injunctive relief, a plaintiff must establish 1) a reasonable likelihood of success on the merits; 2) that irreparable harm will ensue absent an injunction; and 3) that there is no adequate remedy at law. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). If this threshold showing is made, the Court considers two additional factors. First, the Court must balance the harm to the plaintiff if the preliminary injunction is not issued against the harm to the defendant if the injunction is wrongfully granted. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). This balancing involves a sliding scale analysis: The greater

the plaintiff's chances of success on the merits, the less strong a showing the plaintiff must make that the balance of harm is in the plaintiff's favor (and vice versa). *Id.*; *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir. 1995). In addition, the Court should consider the public interest served by granting or denying the motion. *Promatek Indus., Ltd*, 300 F.3d at 811.

In order to establish a prima facie case of unlawful First Amendment retaliation, a public employee must show that 1) he engaged in constitutionally protected speech or conduct, 2) he suffered a deprivation likely to deter him from exercising his First Amendment rights, and 3) his conduct was a motivating factor in the employer's adverse employment action. *See Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009). In this case there is no dispute that Deputy Oakley's decision to run for office and his campaign activities are constitutionally protected. And although Sheriff Vogel argues that Deputy Oakley is free to campaign while attending the Academy in Appleton, the evidence shows that door-to-door campaigning and attendance at local campaign events, the major forms of campaigning for office in Door County, are adversely impacted by the schedule of classes Deputy Oakley is required to attend and the distance he would have to travel to return during the week. The crucial issue as to the merits is whether Sheriff Vogel's requirement that Deputy Oakley attend Basic Recruit Academy as a condition of receiving the transfer to which he was otherwise entitled under the collective bargaining agreement was motivated by Deputy Oakley's decision to run against him.

The primary difficulty with Deputy Oakley's claim is that he was sent to recruit school pursuant to a policy that Sheriff Vogel first initiated in September 2009, more than nine months before Oakley posted for the patrol position that had opened up. On September 23, 2009, Sheriff Vogel advised the deputies within his department by email that they should "also be aware that if

3

a deputy assigned to the jail decides to transfer into the Road Patrol Division we will be sending that officer to the Basic Recruit Training even if you have already taken the course." (Ex. 106.) Sheriff Vogel testified that he elaborated on the policy at a union meeting called to discuss it on September 30, 2010. According to the Sheriff, he explained in the course of that meeting that not every deputy who transferred from the jail to patrol would be sent back to Basic Recruit Academy. The policy was intended to apply only to those who had not within the past five or six years attended Recruit School or been working in patrol. It was pursuant to that policy that Deputy Oakley was sent to Recruit Training Academy after he posted and was accepted as a transfer from the Jail to the Patrol Division. Since the policy pursuant to which he was transferred was promulgated more than nine months before Deputy Oakley applied for the transfer, Oakley has not established, at least on the record as it now stands, that the Sheriff's decision to adopt such a policy was motivated by a desire to retaliate against or injure him because of his political activity.

Indeed, there was no reason to suspect at the time that the policy was announced that it would ever be applicable to Deputy Oakley. Deputy Oakley had been assigned to the Jail Division of the Sheriff's Department since 1999. After a period of time as the Jail Administrator, he became a Shift Sergeant as a result of a reorganization of the division. As such, his pay was actually higher than that of a patrol officer. No evidence was introduced to suggest that the Sheriff knew at the time that the policy was announced that Deputy Oakley had plans to transfer. Moreover, even if Deputy Oakley had been planning to transfer, there was no reason to suspect that he would transfer at a time such that attendance at the Recruit Academy would interfere with his effort to run a campaign against the Sheriff.

To be sure, Sheriff Vogel did know that Deputy Oakley would likely be a candidate against him in the 2010 election. During the most recent prior campaign Deputy Oakley ran against Sheriff Vogel and lost. In that election Deputy Oakley garnered 45% of the votes and promised to run again in 2010. Deputy Oakley suggests that it was widely known that he would run against Sheriff Vogel, and it stands to reason that Sheriff Vogel also must have anticipated a potential challenge from Deputy Oakley at the ballot box. Despite this knowledge, there is no evidence to suggest that Sheriff Vogel promulgated the training policy with Oakley in mind.

Oakley argues, however, that while the Sheriff may not have had him in mind at the time he announced the policy, the evidence shows that his decision to apply the new policy to him was politically motivated. Oakley notes that after the policy was announced but before he posted for a transfer, three other deputies who transferred from the jail division were allowed to do so without attending the Academy. Deputies Matthew Tassel, Gregory Medley, and Dacron Smith had little or no patrol experience before assignment to the jail, whereas Oakley had worked as a patrol officer for four-and-a-half years before he was reassigned to the jail. Moreover, while each of the other transferees had received their certification within the last six years, at least two had attended Recruit School more than six years before they applied for a transfer to patrol. The fact that he was required to attend Basic Recruit Academy as a condition of transfer while the others were not, Oakley argues, is strong evidence that the Sheriff's decision to send him was intended to hamper his campaign.

The Sheriff counters that Oakley differs from the other transferees in that he had attended the Academy seventeen years earlier and had been on assignment to the jail for the past eleven years. Thus, in the Sheriff's view, he was more removed both from the basic training that all recruits underwent and the experience of working as a patrol officer. Although he had performed

5

some work on patrol since his reassignment to the jail, this only occurred on special occasions when additional help was needed and trained back-up was available. The Sheriff denied that the policy was adopted or implemented to retaliate against Deputy Oakley, and claimed that both his Chief Deputy and Field Services Lieutenant, neither of whose jobs were dependent on his remaining the elected Sheriff, were in agreement with the decision to send Oakley to recruit school. Sheriff Vogel also notes that even though Deputy Oakley was informed of when and where he would be attending the Academy in June, he did not complain or indicate he would have a problem with it until the end of August only a week before the training was to commence.

Deputy Oakley testified that he did not immediately complain because he thought he would be able to both attend the Academy and run his campaign, which in itself lends some support to Sheriff Vogel's contention that he did not impose the training requirement to hinder Deputy Oakley's campaign. If Deputy Oakley thought he could do both, why should we believe that Sheriff Vogel ordered the training to prevent him from campaigning. In fact, Sheriff Vogel testified that being in training would actually help Deputy Oakley because, unlike regular shift assignments, it would guarantee his weekends off, which is when most campaign activities occurred. Nevertheless, Deputy Oakley convincingly testified that it soon became apparent that the daily schedule of the Academy and the distance he had to travel significantly hindered his ability to campaign.

In support of his contention that the training requirement is reasonable, Sheriff Vogel notes that under State law, a law enforcement officer loses his certification if, after completing the Academy, he does not work in law enforcement for a period of two years, or three, if he gets an extension. Work in a jail, Sheriff Vogel observes, is significantly different than patrol and requires a different certification. It is for this reason he concluded that retraining should be required for

6

officers who have been both out of the Academy and away from patrol for a substantial period of time.

Sheriff Vogel also relies in part on the declaration of Robert Willis. (Dkt. 14.) Mr. Willis is a law enforcement instructor at Northeast Wisconsin Technical Academy in Green Bay, Wisconsin. His impressive resume includes service as a consultant to the Wisconsin Law Enforcement Standards Board, Bureau of Training and Standards where he has assisted in curriculum development. Mr. Willis' professional opinion is that reasonable police practice requires an officer, such as Deputy Oakley, who has not served on the road or with patrol duties for a number of years to attend a recruit training program before he is put back onto the road with patrol duties. Two principles support Mr. Willis' opinion: law and police practices change over time and law enforcement officers' patrol skills erode over time if they are not used. Mr. Willis notes that the Brown County Sheriff's department has sent officers back to recruit school before allowing them to return to patrol duties after they were away from such assignments for an extended period of time.

In contrast, the Dean of Public Safety at Northeast Wisconsin Technical College, Elizabeth Paape, testified at the hearing that the Basic Recruit Academy was highly unusual for a seasoned law enforcement officer like Deputy Oakley. Ms. Paape, who also has an impressive background in public safety and law enforcement, testified that the majority of students at Wisconsin's Basic Recruit Academy—the curriculum of the 520-hour course is substantially similar regardless of where it is offered—have little to no prior experience as law enforcement officers. In fact, the majority of students in the course are "un-sponsored" which means they do not yet have law enforcement positions, but rather are taking the course in an attempt to secure such employment. She has never seen a student in the Basic Recruit Academy with the significant experience that

Deputy Oakley has. Had she been asked, Ms. Paape could have designed a training course to bring Deputy Oakley up to speed on recent law enforcement developments, which would have been more appropriate for Deputy Oakley. While Ms. Paape agreed that nothing prevented Sheriff Vogel from sending a deputy with nearly twenty years of experience and a valid certification to the Basic Recruit Academy she felt it was unusual for someone with so much experience to be a student in a sixteen-week course designed for brand new law enforcement officers or aspiring officers with no experience.

Although Oakley was not opposed to receiving some refresher training before going back on patrol, he testified he did not think the Academy was necessary. He also testified that he is the only one in his class who is currently certified as a law enforcement officer, has had previous experience as a patrol officer and almost twenty years as a deputy. Oakley himself testified that he had learned little during the five weeks he had already attended that would be useful for working as a patrol officer and that he did not already know. In his view, he should have been trained through the Field Officer Training Program used for the other three transferees from the jail division.

Based on the foregoing, Oakley's argument that he has established a sufficient likelihood of success on the merits to warrant preliminary relief is not without merit. This is not to say that he has proven that the Sheriff's decision to send Oakley to the Academy was political. At this stage a final determination of the merits is neither possible nor required. The Seventh Circuit has held that a party seeking a preliminary injunction need only show a likelihood of success on the merits, not a great or significant likelihood of success on the merits.

> [W]e emphasize that the granting of a preliminary injunction is not a decision on the merits of the plaintiff's suit. It is merely a decision that the suit has enough merit—which need not be great merit—to justify an order that will freeze the situation, in the plaintiff's favor, for such time as it may take to determine whether the suit is, or is not, meritorious.

*Ayres v. City of Chicago,* 125 F.3d 1010, 1013 (7th Cir. 1997).

Here, however, I conclude that I need not decide whether Deputy Oakley has made a sufficient showing on the merits to warrant the preliminary relief he seeks. Regardless of the likelihood that he will succeed on the merits, I conclude that Deputy Oakley is not entitled to the relief he is seeking here. He is not entitled to such relief because he has failed to demonstrate that he does not have an adequate remedy at law. Indeed, the evidence shows just the opposite – that he does have an adequate remedy at law. The relief Deputy Oakley has asked for is a temporary restraining order or preliminary injunction "enjoining plaintiff's compelled attendance at the 'Basic Recruit Academy' at Fox Valley Technical College in Appleton" (Doc. 5) so that he can effectively run his campaign for Door County Sheriff. Where in the Department he would be assigned in the meantime, Deputy Oakley concedes, would be for the Sheriff to decide, at least for now. Indeed, Oakley's attorney conceded during his closing argument that the Sheriff could even reassign Deputy Oakley to his old position at the Jail, though that could result in his later amending his complaint to add other claims.

If this is all that Deputy Oakley is seeking at this time, he does not need an order from this Court. The undisputed evidence shows that Deputy Oakley is under no compulsion to attend the training program and that he can discontinue his attendance at the Academy at any time to pursue his campaign. The Sheriff concedes as much (Decl. of Terry Vogel, ¶ 6.), and no one suggests that Deputy Oakley would be fired. While it is true that the Sheriff would view the decision to

discontinue his training at the Academy as a withdrawal of his request for a transfer, Oakley has already made it clear that he has no intention of withdrawing his request and thus he would remain free to maintain his suit against the Sheriff. If Oakley is able to prove, as he alleges, that Sheriff Vogel's decision to condition his transfer to patrol upon his attendance at the Academy during the time leading up to the election was politically motivated, this Court could then order the Sheriff to transfer him to the Patrol Division notwithstanding his failure to complete the training at the time and place originally ordered. Of course, if Deputy Oakley wins the election, it may not matter. In any event, such an order, together with an award for any damages he incurred, would constitute an adequate remedy at law. Thus, Deputy Oakley does not need the extraordinary relief he is seeking in order to continue his campaign because he has that power himself. He can simply discontinue his training and attend to his campaign. Injunctive relief is only appropriate when an injunction is necessary to prevent irreparable harm and no adequate remedy at law exists. Under these circumstances, it would be improper for this Court to grant such relief.

## CONCLUSION

This Court is of course reluctant to interject itself in the ongoing campaign for Door County Sheriff or the ongoing operation of the Sheriff's Office there. Elections must be decided by voters, not courts. Accordingly, nothing in this opinion should be used by either candidate, or their respective campaigns, during the final weeks of the election. For the reasons set forth above, I have concluded that Deputy Oakley has an adequate remedy at law for his claim that Sheriff Vogel has acted in violation of his constitutional rights in conditioning his right to a transfer to the patrol division upon Deputy Oakley's attendance at the Basic Recruit Academy at Fox Valley Technical

College in the months leading up to the election. For this reason, his motion for a temporary restraining order or preliminary injunction is denied.

**SO ORDERED** this ____19th____ day of October, 2010.

                                             s/ William C. Griesbach
                                             William C. Griesbach
                                             United States District Judge